359 So.2d 931 (1978)
STATE of Louisiana
v.
Douglas B. BOYD
No. 61113.
Supreme Court of Louisiana.
May 22, 1978.
Rehearing Denied June 15, 1978.
*935 Rykert O. Toledano, Jr., Anderson, Toledano & Courtney, Covington, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Woodrow W. Erwin, Dist. Atty., Julian J. Rodrigue, First Asst. Dist. Atty., Abbott J. Reeves, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
Douglas B. Boyd was indicted, along with two other persons, for the armed robbery of William Schultz, a cab driver, in violation of R.S. 14:64. Defendant was separately indicted for the murder of the cab driver who was killed during the course of the armed robbery; however, he was only tried on the robbery charge. Defendant's motion to sever was granted, and, after a four day trial, the jury returned a ten to two verdict of guilty. Subsequently defendant was sentenced to ninety-nine years at hard labor without the benefit of parole, probation or suspension of sentence. On appeal defendant relies upon thirty-eight arguments on assignments of error, having abandoned twenty-five assignments.

Assignments of Error Nos. 1, 2 and 3
Defendant contends that the trial court erred in denying his motion to continue on the basis that defendant's mother, Mrs. Pichon, a material witness for him, was unavailable for trial. In the alternative, he argues that having been denied a continuance, the prosecutor should have been required to stipulate to the truth of the substance of Mrs. Pichon's testimony.
*936 At hearing the morning of trial on the motion to continue, the prosecutor agreed to stipulate that Mrs. Pichon would testify as stated in defendant's motion with the exception of a few facts that the State contended were either not within Mrs. Pichon's knowledge or could be as easily testified to by other subpoenaed witnesses. The State refused to stipulate to the truth of these facts. Defendant does not object to the State's failure to stipulate to all facts stated in the motion.
The trial judge's ruling on a motion to continue is within his sound discretion and will not be disturbed on appeal absent a showing of abuse of discretion. State v. Smith, 322 So.2d 197 (La.1975); State v. Brewer, 301 So.2d 630 (La.1974); State v. Navarre, 289 So.2d 101 (La.1974). Further, C.Cr.P. 710 provides that when a motion to continue is based on the absence of a material witness, it may be denied if the adverse party admits that if the witness were present he would testify as stated in the motion. However, if the court is of the opinion that the case cannot be tried with justice to the defendant despite the admission, it may require the adverse party to also admit the truth of the testimony.
There is no reason here to find the trial judge abused his discretion. Due to the stipulation, most of the facts in the motion were read to the jury. Mrs. Pichon's presence at trial was not essential to protect the defendant since the introduction to the jury of the majority of what she would have testified to was sufficient. The facts which the State refused to admit were covered, in essence, by defendant's sister's testimony. The one exception was the fact that defendant never had keys to a closet where his stepfather kept .410 caliber shotgun shells nor did he have access to the keys which were always in his stepfather's possession. As the State contends, this information would not be within Mrs. Pichon's knowledge and were she to so testify at trial, an objection to such testimony would be proper.
Thus, there was no abuse of discretion by the trial judge's denial of the motion to continue or his failure to require the State to admit the truth of the statements.

Assignments of Error Nos. 5, 6 and 41
Defendant alleges that the trial court erred in allowing his co-accused, Erlest Pichon, to testify at trial. On the second morning of trial, before any testimony had been taken, the State filed a notice into the record that Pichon, whose case had been severed from defendant's, would plead guilty to armed robbery, would be sentenced to twenty years at hard labor without benefit of probation, parole or suspension of sentence, and had agreed to testify on behalf of the State. Defendant objected to Pichon's testimony arguing that he had been denied access to exculpatory statements by Pichon in spite of a prayer for oyer and motion for bill of particulars, and therefore Pichon should not be allowed to inculpate the defendant by testifying. Upon denial of the motion, Pichon testified as to defendant's participation in the armed robbery.
Two statements made by Pichon were introduced into the record at the hearing on the motion for new trial: one made by Pichon himself on May 25, 1976 entitled "True Facts of the Case;" the other given to St. Tammany Parish Sheriff's officials two days after the offense. Certain facts in the statements relative to Pichon's own involvement were inconsistent. Thus, defendant appears to argue that the prior inconsistent statements should have been disclosed since their contradictions would tend to exculpate the defendant. Defendant's characterization of the contents of these statements is in error. Neither statement was exculpatory in nature; rather, each implicated defendant as a participant in the armed robbery and as the person responsible for shooting the cab driver. Thus, the State had no duty under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to provide defendant with a copy of the statements prior to trial. Further, defendant was not entitled to pretrial discovery of witness statements. State v. Thornton, 351 So.2d 480 (La.1977); *937 State v. Phillips, 343 So.2d 1047 (La.1977); State v. Ball, 328 So.2d 81 (La.1976).
These assignments are without merit.

Assignments of Error Nos. 7, 8, 9, 10, 11, 12, 13, 14 and 15
These assignments were taken to the overruling of various objections and motions during the examination of a State witness, Michael Ferrier. Ferrier's testimony was often vague and confusing, and on cross-examination it became apparent that he had previously been a patient at the mental hospital at Mandeville, Louisiana. He testified of overhearing a conversation between defendant and Ernest Pichon concerning a cab driver, in particular, whether or not the cab driver would have cash on him, a gun, and whether the police could be contacted directly over the cab CB radio.
In Assignments Nos. 7 and 14 defendant objects to the trial court's having allowed the witness to give certain opinion evidence, in violation of R.S. 15:463. The witness stated he had been with the defendant and other people first at one bar, and then another, where they all had been drinking. After the district attorney asked Ferrier if he was intoxicated, to which he answered "no," defendant objected. Even if the witness' evaluation of his own level of inebriation is improper, no prejudice was done; on cross-examination, Ferrier admitted having previously told private investigators that he was drunk at the time. Thus, the jury was enabled to determine whether or not the witness' observations when he allegedly heard the conversation could be relied upon.
After Ferrier heard the conversation, he stated, he told the others he was going home, and left. Defendant objected to the prosecutor's question, "why did you tell them you were going home," contending "that is something in the man's mind and not able to testify." After the objection was overruled, the witness replied, "because I didn't want to get involved in whatever they were going to do." Clearly the witness was testifying to facts peculiarly within his knowledge, as allowed by R.S. 15:463. There is no merit to either of these contentions.
The remaining seven assignments arose out of the prosecutor's attempts to elicit from Ferrier what he had heard of the conversation between defendant and Pichon. The dialogue commenced as follows:
"Q. Did you and Eric and Doug and Little Dickie (Ernest Pichon) engage in any conversation?
A. No.
Q. You all weren't talking?
A. Oh, yes, we were talking at the table, you know, sitting down talking.
Q. Did you hear Doug and Eric and Little Dickie discussing anything?
A. No.
Q. You did not overhear that conversation?
A. They walked to a corner and they started talking, just Doug and Dickie.
Q. When they came back to the table, did you hear them talking?
A. No, I went up to the bar.
Q. You heard no conversation at all from them?
A. Conversation when they went, you know, to the corner.
Q. Pardon?
A. When they went to the corner.
Q. What did you hear them discuss, if anything? Speak loud enough so that all twelve of these people can hear you, the judge, the defense counsel, and the defendant and me and this lady who is taking it down.
A. Well, I heard Doug said
In Assignment No. 8 defendant contends that error was committed in allowing the prosecutor to continue asking the same question until he received a satisfactory answer from the witness. Although the questioning may have been repetitious, it is within the trial judge's discretion to control. R.S. 15:275. The grounds for defendant's objections were vaguely stated at trial; however, on appeal he alleges that the prosecutor was leading his witness without first showing that the witness was hostile or *938 unwilling. R.S. 15:277. Exceptions to the general rule that one may not lead one's own witness, unless such witness is unwilling or hostile, have been recognized:
". . . `Thus, the judge, when need appears, will ordinarily permit leading questions to children, or to witnesses so ignorant, timid, weak-minded, or deficient in the English language, that they cannot otherwise be brought to understand what information is sought. It is recognized, especially as to children, that in these cases the danger of false suggestion is at its highest, but it is better to face that danger than to abandon altogether the effort to bring out what the witness knows. . . ." State v. Francis, 337 So.2d 487, 489 (La.1976), quoting from McCormick, Evidence, sec. 6 at page 10 (Cleary, 2d ed. 1972). (Emphasis added).
From an examination of the witness' entire testimony it is apparent that the witness, a former Mandeville patient, was confused, had difficulty recalling the incident with exactitude (e. g., he was unclear on what people came with him to the bar where the conversation took place and who was there on his arrival, and his testimony on this point was inconsistent), and was nervous on the witness stand (e. g., on cross-examination he repeatedly put his hand over his face). There was no error in allowing the leading questioning.
When the witness began to testify about the conversation he heard between the defendant and Ernest Pichon, defendant objected that the same was hearsay. The objection forms the basis for Assignment No. 9. (The same objection was made when Ferrier testified out of the jury's presence on the question of whether the State was taken by surprise by the witness' testimony. See Assignment No. 10, infra).
Hearsay has been defined as an out-of-court unsworn statement offered into evidence to prove the truth of the matter contained therein, and thus resting for its value upon the credibility of the out-of-court asserter. State v. Millet, No. 60635, decided by this court on March 6, 1978; McCormick on Evidence, § 246 (Cleary ed. 1972). The real basis for the ruling disallowing hearsay into evidence is that the declarant is not subject to cross-examination in which his knowledge, memory, credibility and demeanor may be tested and observed. See 21 Loyola L.Rev. 279 (1975).
Defendant contends that the State was attempting to introduce statements of co-conspirators without having first laid the proper foundation that a conspiracy was in existence. R.S. 15:455. The conversation overheard by Ferrier did not involve only defendant's co-indictees; defendant was an active participant in the conversation, according to Ferrier. Therefore the requirements of R.S. 15:455 are inapplicable.
The State argues that the utterance is admissible under the res gestae exception to the hearsay rule. R.S. 15:448. However, Ferrier's testimony about the conversation in which defendant participated is not hearsay because it was not introduced to prove the truth of the matters asserted. Rather, the conversation is admissible to show that it occurred. Factors affecting the credibility of Ferrier (who was asserting the fact the statements were made) were before the trier of fact for examination. See 14 La.L. Rev. 611, 614 (1954).
When the hearsay objection was overruled, Ferrier testified to what he heard of the conversation:
"A. Well, they were sitting in a corner and they were talking about could they get in touch with the police from a cab car on his radio and at that time when I heard what they said, I told them I was leaving.
Q. Now besides could they get in touch with the police on the cab radio
A. Um hum.
Q. Did you hear them discussing anything else?
A. That was all." (Emphasis added).
The prosecutor then pleaded surprise and requested to impeach the witness with prior inconsistent statements. Out of the jury's presence defendant first requested an instruction to the jury to disregard the plea *939 of surprise and request to impeach, and then modified his motion to move for a mistrial and alternatively for a jury admonishment. The trial judge allowed the prosecutor to impeach the witness, still out of the jury's presence, by questioning him about a prior statement he had given to the sheriff's office in Slidell. The witness admitted making the statement and indicated he had simply forgotten about the additional parts of the conversation he had not yet testified to before the jury, and admitted he now remembered it in its entirety. The trial judge then denied the mistrial, ordered that the district attorney would not be allowed to impeach the witness before the jury now that his memory was refreshed, and could only proceed with direct examination. The jury returned and the court instructed the jury to disregard the district attorney's statements.
Assignment No. 10 was taken to the failure of the trial judge to grant the mistrial, arguing that the prosecution should not have been allowed to impeach its witness because the necessary surprise was not shown.
R.S. 15:487 and 488 provide:
"No one can impeach his own witness, unless he have been taken by surprise by the testimony of such witness, or unless the witness show hostility toward him, and, even then, the impeachment must be limited to evidence of prior contradictory statements." R.S. 15:487.
"`Surprise' in the sense of the last preceding article does not arise out of the mere failure of the witness to testify as expected, but out of his testifying upon some material matter against the party introducing him and in favor of the other side." R.S. 15:488.
Defendant argues that it was insufficient for the State to show that the witness was merely ignorant of the facts he was expected to prove but rather the testimony at trial must be contrary to what was given earlier. Therefore, he alleges that there was a "mere failure of the witness to testify as expected."
There was sufficient "surprise" to justify an impeachment by the State. In State v. Clark, 325 So.2d 802, 808-09 (La. 1976), a defense witness on the stand stated he had not heard the defendant say anything before an attempted prison escape with which the defendant was charged, whereas he had earlier told defense counsel that the defendant had stated he wanted to call off the escape but another prisoner had threatened him into participating. The question of whether there was surprise on the part of the defense was not presented to the court, but such a conclusion is implicit in the opinion. In the instant case the witness told part of the story but stopped short of telling all that he had heard, leaving out such significant facts as the two men involved in the conversation discussed whether or not the cab driver would have a gun or any cash on him. Even if there was no showing of surprise, there was no impeachment in front of the jury and any prejudice suffered by the defendant due to the district attorney's claim of surprise and request to impeach was cured by the admonition by the trial judge. No mistrial was called for. C.Cr.P. 770, 771.
In Assignment No. 11 defendant contends that the trial court erred in denying his motion to exclude all of witness Ferrier's testimony, arguing that once the witness had been impeached, his further testimony had no probative value. Thus, he contends, he should be able to prohibit all further testimony of that witness.
Defendant is correct when he asserts that a prior inconsistent statement of one's own witness cannot be admitted as substantive evidence of the truth of its contents, but the effect of its admissibility is limited to its effect on impeaching the credibility of the witness. State v. Williams, 331 So.2d 467, 470 (La.1976); State v. Ray, 259 La. 105, 249 So.2d 540 (1971). Nevertheless, the jury heard no impeaching testimony and the contents of the prior inconsistent statement were never introduced into evidence. Therefore, there is no merit to this contention. Furthermore, even if there had been impeachment of the witness before the *940 jury, defendant's protection would be in an instruction to the jury as to the limited purpose of the inconsistent statement rather than exclusion of the witness' testimony.
By Assignment No. 12 defendant urges that the trial court erred in refusing to order a recess to enable defense counsel to examine the prior inconsistent statement which he needed for impeachment purposes. It appears that defense counsel may never have received a copy of the statement; however, although the motion for recess was denied, the trial court indicated that a copy should be made available to the defendant. It appears that the contents of an inconsistent prior statement given by the witness to private investigators for the defendant was effectively used by defense counsel to catch the witness in inconsistencies. There has been no showing that defendant suffered any prejudice by being denied a recess to review the statement in the prosecutor's possession.
When the jury returned, the prosecutor continued his direct examination of Ferrier, with the following result:
"Q. After the cab came, did you overhear any conversation or were you part of any conversation between Gutter, Pichon and Boyd?
A. Say that again.
Q. I said after this cab came did you overhear any conversation or were you part of any conversation between Boyd, Pichon and Gutter?
A. We was just talking about, you know, what we were going to do the next day.
Q. Did you overhear any conversation between Boyd and Pichon?
A. I heard them talking about the radio and all this.
Q. What were they talking about?
A. I heard Doug ask Little Dickie did the man have any way, you know, to get in touch with the police if anything was to happen or anything and they said that they needed some money.
Q. Did you overhear them say anything else?
A. That was it." (Emphasis added).
Again, the jury was retired, this time on the prosecution's motion, and the district attorney questioned the witness in regard to his prior statement. Defendant moved for a mistrial, which was denied, forming the basis of Assignment No. 13, contending that the jury would be confused by having been called out twice, and therefore a fair trial would be impossible. Defendant further argues he was denied due process by the witness' prior statement being allowed to stand as truth.
In spite of the confusing nature of the witness' testimony, there existed no sufficient grounds for a mistrial. Any inconsistencies could be exploited by the defense attorney on cross-examination, as they were; it would then be the jury's role to determine the weight to give the testimony of this witness. Also, there was no denial of due process, as contended by defendant, because the contents of the prior inconsistent statement were never introduced to the jury.
At the close of cross-examination in which the defense attorney was successful in showing certain inconsistencies in the witness' testimony as compared with statements made on direct examination and statements previously given to private investigators, the witness explained: "Well, you see, me I be crazy sometime. I just came out of Mandeville, so you've got to go check with my doctor, you know." And in response to defense counsel's question: "Do you really know what's going on right now?", the witness replied, "I don't know, man. I'm lost." Counsel then obtained the removal of the jury and moved for a mistrial arguing that due to the inconsistencies in the witness' testimony and the inevitable jury confusion, the defendant could not receive a fair trial. The overruling of this motion forms the basis for Assignment No. 15.
The trial judge correctly overruled the motion. The jury had the opportunity to evaluate the credibility of the witness in light of his confusing and often inconsistent *941 testimony. This did not disrupt the defendant's opportunity for a fair trial. The judge's jury charges properly instructed the jurors that they had the option of disregarding testimony of witnesses they disbelieved. There is no merit to this argument.

Assignment of Error No. 34
Defendant contends that the trial court erred in sustaining the State's objection to testimony of defense witness, private investigator Thomas Mann, about a prior inconsistent statement of the State witness Michael Ferrier. Mann had taken a statement from Ferrier wherein he denied hearing any conversation in which defendant was involved, a statement directly contradictory to what Ferrier testified to on the witness stand.
The procedure for impeaching a witness is set forth in R.S. 15:493:
"Whenever the credibility of a witness is to be impeached by proof of any statement made by him contradictory to his testimony, he must first be asked whether he has made such statement, and his attention must be called to the time, place and circumstances, and to the person to whom the alleged statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. If the witness does not distinctly admit making such statement, evidence that he did make it is admissible."
When Ferrier was cross-examined by defense counsel, the witness was questioned about the prior inconsistent statement given to Mr. Mann and admitted it. Thus, the witness was properly impeached. Defendant argues, however, that due to the confusing and inconsistent testimony of Ferrier (see Assignments Nos. 10-15, supra), and the fact that undue emphasis was given to the in-court testimony of Ferrier, in the interests of fundamental fairness it was essential for him to have been allowed to introduce the statement.
Defendant was given the opportunity to impeach the witness. Once the witness admitted making the statement, defendant is precluded from proving it up. Although the testimony of the witness was sometimes confusing and seemingly contradictory, defendant was given the opportunity to, and did, impeach the witness. There was no error in refusing to allow defendant to reemphasize the prior inconsistent statement to the jury.

Assignment of Error No. 16
By this assignment defendant objects to the testimony of State witness Ernest Pichon, defendant's co-indictee who turned State's evidence in exchange for a twenty year sentence on a guilty plea to armed robbery, and dropping of the murder charge, regarding a conversation he had with defendant and a few others planning the armed robbery. Defendant alleges that the testimony constitutes hearsay and is therefore inadmissible. The same arguments made in Assignment No. 9, supra, are made here. The testimony was not hearsay for the reasons stated in the discussion of Assignment No. 9.

Assignments of Error Nos. 18 and 20
Defendant contends the trial court erred in overruling his motion for mistrial made when defendant's co-accused, Ernest Pichon, testified as to another crime by defendant for which defendant was not on trial the murder of the cab driver. In addition, defendant alleges that Prieur notice (State v. Prieur, 277 So.2d 126 (La. 1973)) was required in order for the evidence to be introduced, and the absence of it is reversible error.
The evidence revealed that Pichon called for a cab at the direction of Eric Gutter, another person charged with the armed robbery and murder. When the cab arrived, defendant and Gutter entered it, the cab drove only a short distance and stopped; Pichon saw the cab driver get out of the cab and saw defendant shoot him. A money pouch was taken from the cab driver's body before the body was disposed of by Pichon and defendant.
*942 As the court recently stated in State v. Matthews, 354 So.2d 552, 557 (La. 1978):
". . . Evidence of the murder was highly relevant to prove that the robbery of the victim was conducted by force or intimidation, an essential element of the crime of armed robbery. Hence, evidence of the murder was admissible for this purpose. La.R.S. 14:64; La.R.S. 15:435 and 441. Moreover, under the facts of this case, the murder of the robbery victim was an immediate concomitant of the armed robbery and formed in conjunction with it one continuous transaction. Therefore, it was also admissible as part of the res gestae. La.R.S. 15:448. What forms part of the res gestae is always admissible in evidence. La.R.S. 15:447; State v. Morris, 340 So.2d 195 (La.1976); State v. Curry, 325 So.2d 598 (La.1976).. . ."
The evidence in State v. Matthews, supra, showed that the victim could have been robbed at the time of his murder. See also State v. Flowers, 337 So.2d 469, 472 (La. 1976). In the instant case, the evidence demonstrated that the victim was first murdered and then robbed. Thus, "the two criminal acts were related and intertwined to such an extent that the state could not have accurately presented its case to the jury without reference to both of them." State v. Clift, 339 So.2d 755, 760 (La.1976). Because the evidence was independently admissible as part of the res gestae, Prieur notice was not required as a prerequisite to its admissibility. State v. Brown, 340 So.2d 1306, 1308 (La.1976).
These assignments are without merit.

Assignments of Error Nos. 19 and 26
In Assignment No. 19 defendant contends the trial court erred by allowing the prosecutor to rehabilitate his own witness before the witness had been impeached. Ernest Pichon's testimony at trial implicated both the defendant and defendant's co-indictee, Eric Gutter, in the armed robbery. On direct examination, the prosecutor questioned the witness about a statement he had given police officers upon his arrest which differed from his testimony at trial. The judge indicated, in overruling defendant's objection, that his rehabilitation would be proper, and, since "it is just a matter of timing," the prosecutor was allowed to proceed. The witness then explained that he had not implicated Gutter in the prior statements because he was afraid of Gutter who had to share a cell with him.
R.S. 15:484 provides:
"Before a witness has been sworn he can be neither corroborated nor impeached, nor is testimony to establish the credibility of a witness admissible until that credibility has been attacked." (Emphasis added).
Just as a witness may not be corroborated by evidence of prior consistent statements before he has been impeached, see 12 Tul.L.Rev. 286, 291 (1938), the prosecutor should not be allowed to explain away prior inconsistent statements before they have been brought into evidence by way of impeachment.
Nevertheless, such error does not require a reversal. The prior inconsistent statement was available to defense counsel and was used, to some extent, on cross-examination to show inconsistencies between the witness' testimony and the prior statement. Defendant has made no showing that any prejudice resulted from the "rehabilitating" testimony having been taken out of the proper order. This is not to be compared to State v. Williams, 331 So.2d 467 (La.1976), cited by defendant in brief. In Williams, a witness had testified about a statement allegedly made by the victim of an aggravated battery identifying the defendant as the assailant. That testimony could possibly have been corroborative of the victim's account; however, when the victim later testified, she did not name the defendant as her assailant. The court found there was reversible error in light of the fact that admission of the damaging evidence of the defendant's identity which appeared nowhere else in evidence was prejudicial to the substantial rights of the accused. No such prejudice occurred in the *943 instant case. There is no merit to this contention.
In Assignment No. 26 defendant makes the same allegation as in Assignment No. 19. In this assignment, however, defendant objects to the prosecutor's being allowed to rehabilitate Lt. Mike Moore who was being questioned about an oral inculpatory statement made by the defendant. According to Lt. Moore, the defendant, while being interrogated, admitted he shot the cab driver but refused to give a taped or written statement. The prosecutor then questioned the witness about his written report which omitted any mention of defendant's inculpatory statement. Over defense objection, Lt. Moore explained that the omission was merely an error on his part.
The State argues that defendant's characterization of this examination as rehabilitation is in error, contending that the questions and answers were merely directed to the contents and omissions of the police report. It appears, however, that defendant's description is more accurate. Thus, it appears that again there was an improper rehabilitation of a witness before that witness' credibility had been attacked. R.S. 15:484. Nevertheless, as in Assignment No. 19, the error does not warrant reversal. Defense counsel on cross-examination ably questioned the witness so that the jury might have doubted whether or not the statement which should have but did not appear in the police report was ever made by the defendant. Hence, the effect of any prejudice sustained by the defendant from the untimely rehabilitation was minimized by defense cross-examination. There is no merit to this contention.

Assignment of Error No. 21
Defendant complains of the overruling of his objection to State witness Ernest Pichon's answering the prosecutor's question about being afraid of defendant. Defendant contends that the question was irrelevant and prejudicial because it branded the defendant as an undesirable. Defendant correctly points out that this question was asked on direct examination at a time when defendant's character had not been put at issue.
The State alleges that due to defense counsel's failure to move for a mistrial or request an admonition after the overruling of his objection, he is precluded from having the issue reviewed on appeal. However, recently, in State v. Hamilton, 356 So.2d 1360, decided by this court on March 6, 1978, we held that once a defense objection has been overruled, failure to move for mistrial or for admonition does not preclude review of the trial judge's failure to sustain a properly made objection.
Even though there might have been error in allowing the witness to answer the prosecution's question, such error would be harmless. A review of the record shows that the witness' remark could not have had a substantial impact on the minds of the jurors; further, there was no substantial violation of a constitutional or statutory right warranting a reversal. C.Cr.P. 921. See State v. Tytus, 256 La. 962, 240 So.2d 723 (1970). This assignment is without merit.

Assignment of Error No. 23
Defendant contends that the trial judge erred in refusing to grant a mistrial when a police officer made unsolicited remarks about defendant's attitude while being questioned after his arrest. When Sergeant Al Herman testified that "most of the time he sat there with just a smirk on his face", the trial judge sustained defendant's objection to the statement. However, the witness continued, "And when I asked Mr. Boyd a question, he would grin at me." Defendant's motion for mistrial was overruled, but the trial court admonished the jury to disregard the last two statements made by Sergeant Herman.
This court has held that "the unsolicited, unresponsive remark of a [police officer] as to another crime is not the comment of a `court official' which would mandate a mistrial under Article 770 of the Code of Criminal Procedure." State v. Hills, 354 So.2d 186, 191 (La.1977), citing *944 State v. Hegwood, 345 So.2d 1179, 1184 (La.1977). The admonition was sufficient to cure any prejudice to the accused. References to defendant's demeanor do not carry the substantial prejudice that is present when a witness has referred to other crimes of the defendant. See, e. g., State v. Foss, 310 So.2d 573, 577 (La.1975).

Assignment of Error No. 24
Defendant contends that the trial court erred in overruling his objection to the identification of certain articles of clothing belonging to Ernest Pichon by a State witness. He argues that the evidence bore no relevance to the offense charged.
The objection came during the examination of Sergeant Herman. Herman was asked by the prosecuting attorney to identify a coat seized from Pichon's residence and the defendant immediately objected. The objection was overruled and the State asked the witness to identify another article of Pichon's clothing. The defendant again objected, and, after a discussion at the bench, the State withdrew the question and the defendant withdrew the objection. The defendant did not object to the introduction of the coat into evidence later in the trial. It does not appear that the State is correct in its argument that the objection was withdrawn as to the identification of the coat. A fair reading of that part of the transcript indicates that the defense counsel withdrew his objection to the identification of the other article of clothing only after the State agreed to withdraw the question.
It does not appear that the identification of the coat bore any relevance to the offense charged. The coat did not have any bloodstains on it, nor was there any testimony indicating that Pichon wore the coat on the night of the robbery/murder. The State's argument that it corroborates the officer's testimony by showing that he did actually participate in the seizure is very tenuous and does not establish its relevancy. Nevertheless, the identification of the coat could have in no way prejudiced the defendant. While it appears that the trial court incorrectly ruled on the relevancy of the identification, that error is not reversible error.

Assignments of Error Nos. 27, 54, 55 and 59
In Assignment No. 27 defendant contends that the trial court erred in denying his motion for a mistrial when State witness Linda Reel, a serologist, was allowed to testify that a small portion of blood discovered on defendant's pants was of the same general blood type grouping as that of the victim. Additionally, defendant urges error in overruling his alternative motion that all the witness' testimony should have been excluded.
Ms. Reel testified that the victim's blood had been typed as A positive and that blood found on defendant's pants leg was determined to be type A human blood. On cross-examination the witness stated that the Rh factor of the blood (i. e. positive or negative) was not determined since the quantity of blood available on the pants was insufficient to run a complete Rh typing. Defendant moved for a mistrial arguing that in spite of his bill of particulars and prayer for oyer requesting disclosure of evidence favorable to the accused (Brady v. Maryland, supra), he was denied the opportunity to examine this evidence. The trial court responded that the evidence was not necessarily exculpatory (and therefore was not required to be disclosed by Brady) just because it would not conclusively show that the blood on defendant's pants was the same as the victim's. Ms. Reel testified that the blood sample was consumed by the tests run and, therefore, the State could not have given defendant any of the sample to test.
By Assignments Nos. 54, 55 and 59 defendant contends that the trial court erred in refusing to require the State to disclose its possession of certain physical evidence or to provide it to the defendant to enable him to make his own independent examinations. Those items included fingerprints lifted during the course of the criminal investigation, and requests for physical evidence recovered from the scene of the crime or *945 taken from defendant or his co-indictees. Defendant admits that the State provided him with the alleged weapon and the spent casing for his own examination. Defendant specifically complains that the State's failure to allow him to inspect the pants and shoes he was wearing the night of the offense was devastating to his defense and deprived him of due process of law. After the trial court's ruling on the State's refusal to answer questions relating to this evidence or to provide it for defendant's inspection, defendant sought writs in this court. Writs were denied on October 22, 1976. It should be noted that La. Acts 1977, No. 515, which would have allowed discovery of this evidence, was not in effect at the time of defendant's trial.
Although the right to pretrial discovery was severely limited prior to the new discovery rules:
". . . those limitations may not be allowed to infringe upon the defendant's constitutional rights to due process of law or to offend principles of fundamental fairness. . . ." State v. Gray, 351 So.2d 448, 454 (La.1977).
In Barnard v. Henderson, 514 F.2d 744 (5th Cir. 1975), where the Fifth Circuit Court of Appeals granted habeas corpus to a defendant whose conviction had been previously affirmed by this court, when defendant was denied an opportunity to conduct an independent ballistics test on the weapon allegedly used in the offense charged, that court stated:
". . . Fundamental fairness is violated when a criminal defendant on trial for his liberty is denied the opportunity to have an expert of his choosing, bound by appropriate safeguards imposed by the Court, examine a piece of critical evidence whose nature is subject to varying expert opinion." 514 F.2d at 746.
In regard to Assignment No. 27, the trial court was correct in its estimation that the inconclusive nature of the expert's tests were not necessarily exculpatory and thus disclosure was not mandated under Brady. Of substantial importance here is the fact that, according to Ms. Reel, the entire sample was consumed by the tests she ran. In State v. Migliore, 261 La. 722, 260 So.2d 682 (1972), this court held that "because of the sufficient amount of the [narcotics] evidence," the defendant should have been allowed to make an independent examination of the evidence. Id. at 742, 260 So.2d at 689. However, in the instant case it appears that even had the State been willing to comply with defendant's requests, it would have been unable to do so. The trial court did not err in denying defendant's alternative request to exclude all of the witness' testimony and to instruct the jury to disregard it in its entirety. Nowhere in Ms. Reel's testimony did she state that the blood found on defendant's pants was the victim's blood. Indeed, on cross-examination, Ms. Reel admitted that she would be unable to say whether the blood found on defendant's pants was the same as found in the sample from the victim. Thus, the jury was not misled into believing that the witness' testimony was conclusive, and admission of the testimony would therefore not have the damaging effect on defendant's case that he contends. Rather, the jury was in a position to evaluate the testimony and determine what weight it was to be given.
No reversible error was shown by Assignment of Error No. 27.
In regard to Assignments Nos. 54, 55 and 59, there was no reversible error committed by the State's failure to provide fingerprints to the defendant. The only prints discussed at trial was a partial print found on the windshield of the victim's taxicab which the State's expert witness testified was of no value. There was no mention at trial of prints found on the weapon.
Nor was error committed by the failure of the State to provide hair samples to the defendant, or items of clothing taken from his co-accused, Ernest Pichon. Ms. Reel testified that hair samples from the victim matched hair samples found on the hood of the victim's cab, that she found human hair on Pichon's T-shirt which was similar in physical characteristics to the victim's hair, *946 and that she found type A human blood on Pichon's overcoat. However, this evidence did not serve to prove defendant's involvement in the crime, and the fact that defendant had no opportunity to make his own examination would not have prejudiced his defense in any way.
There is an important question presented by the State's failure to provide defendant with a sample of the mud scrapings taken from defendant's shoes and a mud sample from the bridge where the victim was allegedly robbed and murdered. The State's expert witness, Herman Parrish, testified that the mud on defendant's shoes was similar in composition to a test sample which had been taken from the bridge. Although he admitted that the soil samples were not identical and could have come from different locations, he testified that that fact was unlikely. Hence, the implication of his testimony was that defendant was present at the scene of the crime.
Defendant should have been provided with some of the soil samples to enable him to obtain his own expert opinions which could possibly have disputed the State witness' findings. In State v. Gray, supra, we found that the trial judge erred in refusing the defendant (who was being tried for an aggravated rape) an opportunity to examine and test clothing taken from the victim and defendant where the State's expert testified that the victim's clothing was stained with blood and semen, that the defendant's pants and shirt showed a semen residue, but that he was unable to determine whether the semen found on the victim's clothing matched the defendant's secretion grouping. There we noted that defendant's own experts may have discovered that the semen and blood groupings of defendant may not have matched that found on the victim's clothing. We held, however, that the failure to provide the evidence for pretrial inspection did not constitute reversible error by interpreting the trial judge's ruling as an invitation to defendant to move for a new trial on grounds of newly discovered evidence where the evidence was still available for examination.
From Parrish's testimony, it appears that there was little or no mud left on defendant's shoes at the time of trial from which the defendant could have conducted his own examination thereafter and presented the results as newly discovered evidence on a motion for new trial. Nor does the State allege, as in Assignment No. 27, supra, that the samples were consumed by the State's tests so that nothing was available to provide to the defendant prior to trial.
Nevertheless, the error is not reversible. When defendant took the stand in his own defense he attempted to explain away Parrish's opinion testimony that the mud on defendant's shoes was similar to that taken from the scene of the offense; he asserted that earlier that day he had walked with a young lady over the bridge. Defendant did not dispute the fact that the mud on his shoes was the same or similar to the sample taken from the scene.
These assignments are without merit.

Assignment of Error No. 62
By this assignment defendant contends that the test results obtained by Ms. Reel, discussed in Assignment No. 27, should have been provided to the defense. That same allegation was raised in State v. Gray, supra, at 453, wherein the issue was treated as such:
"Assignment No. 3 deals with whether the defendant had a right to access to the results of scientific tests made upon the clothing of the defendant. With certain limited exceptions, there was no pre-trial discovery in criminal cases at the time of this trial. State v. Hodges, La., 349 So.2d 250 (decided June 20, 1977); State v. Jones, 332 So.2d 466 (La.1976); State v. Collins, 308 So.2d 263 (La.1975). The test results here requested do not fall within one of the exceptions, therefore the assignment is without merit."
However, in Gray, as previously noted (see Assignments Nos. 27, 54, 55 and 59), we interpreted the trial judge's ruling to mean that defendant had recourse by a motion for new trial on grounds of newly *947 discovered evidence where the evidence was still available for examination. Due to the unusual circumstances of the instant case, where the evidence at issue had been consumed and could not be independently examined, defendant should have been provided a copy of the test results from the State's expert examination. In any event, failure to provide the test results did not constitute reversible error since defendant was able to successfully exploit the inconclusive nature of the tests on cross-examination. Nothing further could have been accomplished on defendant's behalf had he obtained a copy of the report before trial.
The assignment is without merit.

Assignment of Error No. 29
Defendant contends that the trial court erred in overruling his objection to the introduction of the shotgun belonging to Eric Gutter into evidence. He argues that the State did not prove its relevancy because the testimony from the ballistics expert showed that the gun could not be positively identified as the one used in the offense and because there was no direct evidence showing that the gun was ever in the defendant's possession on the night of the offense.
Defendant's assignment is without merit. In order to admit demonstrative evidence, it is the burden of the State to establish that it is more probable than not that the object is connected with the offense. State v. Demouchet, 353 So.2d 1025 (La.1977); State v. Williams, 343 So.2d 1026 (La.1977). The State introduced evidence in the present case showing that the cab driver was shot with a .410 gauge shotgun; that a .410 gauge shotgun was seized from Eric Gutter's apartment; that the gun used in the offense was returned to Gutter's apartment after the offense; and that the defendant acted in concert with Gutter and Pichon in the commission of the offense. This showing is sufficient.

Assignment of Error No. 30
Defendant contends that the trial court erred in admitting into evidence over objection hair samples taken from the slain cab driver. He argues that the evidence was not relevant because the defense and the State had stipulated that the victim was the person from whom the samples were taken. The defendant has misrepresented the scope of the stipulation.
The stipulation read to the jury was as follows:
"It is stipulated by counsel for the defendants (sic) and counsel for the state that the entire incident involving the cabdriver took place on the bridge on Williams Road previously identified."
The hair samples were compared with samples taken from the hood and windshield of the cab and were found to possess similar physical characteristics. The evidence was arguably relevant to show that the victim was shot while next to the cab, which indicates that the perpetrators were armed at the time of the robbery.
While the relevance of the evidence was tenuous at best, its introduction was not prejudicial.

Assignment of Error No. 32
Defendant contends that the trial court erred in allowing the State to recall a witness after it had rested its case in chief.
The record reveals that immediately after the State rested, the jury was retired and the defendant moved for a directed verdict of acquittal. The motion was denied and the court ordered a recess. Immediately after the recess, the State requested that it be allowed to recall one of its witnesses, Sergeant Drennan, so that he could testify as to where a soil sample which had been the subject of tests and previous testimony had been taken. The defendant objected on grounds that the State had already rested its case and that the evidence was not relevant.
In brief, the defendant relies on the Official Revision Comment (c) to C.Cr.P. 765 for the proposition that the order of trial is not to be altered by the trial judge. That comment states:

*948 "(c) The provision of C.C.P. Art. 1632, which authorizes the court to vary the order when circumstances justify, is omitted from this article, because it seems dangerous in criminal cases. Variations can occur, of course, if the defendant does not object, but the court should not have the power to order variations over the defendant's objection."
The defendant's argument is without merit. This court has held that the trial court may allow the State to reopen its case. See State v. Bias, 337 So.2d 426 (La. 1976); State v. Washington, 272 So.2d 355 (La.1973); State v. McLean, 211 La. 413, 30 So.2d 187 (1947). In the present case the defendant had not begun the presentation of his case and was in no way prejudiced by the court's allowing the State to supplement the testimony concerning the soil sample. The reference to the dangers in allowing the court to alter the order of trial in C.Cr.P. 765, Comment (c), is directed toward the serious problems involved in allowing the State to alter the presentation of its case so as to surprise the defendant or to prejudice his defense, and not toward the technical problem presented in this assignment.

Assignments of Error Nos. 33, 67, 68, 69 and 71
These assignments were taken to the denial of motions to suppress all inculpatory statements made by the defendant and all tangible evidence seized from the defendant.
A. Motion to Suppress Inculpatory Statements
Prior to trial the defendant filed a motion to suppress inculpatory statements alleging that they were not free and voluntary when made and that he had not been informed of his Miranda rights. He argues that the State failed to carry its burden of proving the voluntariness of the statements.
The officer who took the defendant's statement testified at the hearing that he advised the defendant of his rights at the time he was taken into custody and again after booking. The officer also stated that the defendant was never hit, slapped, mistreated, or called names during the questioning. The defendant offered no evidence to rebut the State's testimony showing that the statements were made voluntarily.
This assignment is without merit.
B. Motion to Suppress Tangible Evidence
Defendant advances three arguments in support of his contention that the physical evidence should have been suppressed. First, he contends that the affidavit for the search warrant does not support a finding of probable cause to search. The affidavit contains the following reasons for the issuance of the warrant:
"On January 15, 1976 Officers Sgt. E. L. Hermann Jr. and Sgt. Mike Moore were investigating an armed robbery and Murder that occurred in St. Tammany parish, State of La. These officers arrested Douglas Boyd, Ernest Pichon, and Eric Gutter, charging them with the crime of Armed Robbery and Murder. During interrogation of the three above named subjects, Boyd stated the shirt that he was wearing at the time of the Murder is now being concealed in the above described residence. Let it be noted that Boyd made the statement to the two officers after being fully advised of his constitutional rights."
Defendant argues that because the affidavit merely states that Boyd said that "the shirt he was wearing at the time of the murder is now being concealed in the above described residence," there is nothing to indicate that this was the shirt that he (Boyd) was wearing on the night that he committed the offense. He argues that the same statement could have been made by anyone and thus subjected his residence to a search.
Affidavits for search warrants are to be tested and interpreted in a commonsense and realistic fashion. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 *949 L.Ed.2d 684 (1965); State v. Segers, 355 So.2d 238 (La.1978). Interpreting the present affidavit in a commonsense fashion leads to the conclusion that probable cause to search was established. The affidavit stated that Boyd had been arrested for the murder and armed robbery and that Boyd had admitted that the shirt he had worn on the night of the offense was in the house. This is sufficient to establish probable cause to search.
Defendant also contends that the affidavit for the search warrant was invalid in that while it lists "shotgun shells" as an item to be seized, it contains no facts which establish probable cause to search for the shells. We disagree. The affidavit provided the essential facts necessary for the magistrate to conclude that there was probable cause to search for evidence of the crime. First, and most importantly, the affidavit provided the magistrate with the certain knowledge that a crime had been committed. Second, by including the fact that the defendant had been arrested, the affidavit connected the defendant to the commission of that crime. Finally, by stating that the defendant had admitted that his shirt was concealed at the residence, the affidavit connected the residence to be searched with evidence of the crime. From this showing it is not unreasonable to conclude that other evidence of the crime would also be concealed in the residence. See State v. Flood, 301 So.2d 637 (La.1974), cert. den. 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975).[1]
Defendant's next argument involves the failure to suppress a shotgun seized from Eric Gutter, a co-defendant prior to severance. He contends that the trial court erred in holding that he had no standing to complain of the seizure of the evidence from Gutter.
Art. 1, § 5 of the La.Const. of 1974 provides in part that "[A]ny person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court." This court has held that this provision allows a defendant to raise the illegality of the search of another provided that he is adversely affected by that search. State v. Herbert, 351 So.2d 434 (La.1977) (On Rehearing); State v. Culotta, 343 So.2d 977 (La.1977). Although it is not entirely clear from the record, it does appear that the defendant's motion to suppress this evidence was denied on the ground that he did not have standing to complain of the seizure. Because the gun was introduced at the defendant's trial, the trial court's ruling on standing was error.
However, the trial court's error does not require a reversal of the defendant's conviction. As noted above, at the time of the motion to suppress hearing, Gutter and Boyd were co-defendants (along with Pichon) and the hearing was on motions to suppress filed by all of the defendants. The issue of the legality of the seizure of the gun was fully presented to the trial court and after the hearing the trial court denied Gutter's motion to suppress on the merits of the search and seizure.
Sergeant Herman testified at the hearing that during his investigation he learned that Pichon had been at the Little Coach Bar on the evening of the robbery/murder and that he had called a cab. Herman and Sergeant Moore went to Pichon's apartment and told Pichon that they were investigating the offense. They advised Pichon of his rights and asked him to accompany them to the sheriff's office. While inside Pichon's apartment the officers noticed a pair of pants with what appeared to be bloodstains on the waistband and cuffs. Pichon agreed to let them take the pants to *950 the station. On the way to the sheriff's office with Pichon, the officers saw another man (Gutter) who Pichon indicated was his brother. They stopped Gutter, advised him of his rights, and took him to the sheriff's office also.
At the station Pichon told the police that the shotgun was under the bed at Gutter's apartment. Gutter told the officers that he would take them to the apartment and get the gun for them. Herman's testimony indicates that Gutter voluntarily took the officers to the apartment and showed them where the gun was. Officer Herman also read from the statement given by Gutter and it clearly indicates that Gutter consented to the search and subsequent seizure of the gun.
Therefore, the search was a valid consent search and the trial court properly ruled the evidence admissible.

Assignment of Error No. 35
In an attempt to explain the presence of blood on his pants legs (as testified to by State witness Linda Reel, see Assignments Nos. 27 and 62), defendant testified that it could have been his own blood from a cut on the top of his foot caused by shoes that were too small. When Ms. Reel was called by the State on rebuttal, the defense objected to the State's question whether anything on the inside of defendant's shoes looked like it could be dried blood. This assignment was taken to the overruling of defendant's objection.
Defendant contends that since no tests had been conducted by Ms. Reel for the presence of blood on the inside of the shoe, her testimony was erroneously admitted as an expert opinion without the proper foundation having been laid. He alleges that without having had the benefit of his own expert witness to rebut Ms. Reel's testimony, he was unduly prejudiced.
Ms. Reel testified that there was no appearance of blood on the shoes or anything suggestive of it. Although she admitted that she could not tell for sure if a stain that appears to be blood is such without a benzidine test, she stated that there were no stains on the shoe on which she would choose to run a laboratory test for blood. Two stains were present, one white and one gray; however the witness testified that blood does not dry to either of those colors but rather turns a brownish red.
There was no error in allowing Ms. Reel to testify in this regard. She was qualified to say the physical characteristics of blood were not present without her needing to conduct laboratory tests. The weight to be given this testimony was to be determined by the jury.
This assignment has no merit.

Assignment of Error No. 37
Defendant contends the trial court erred in ruling that the State's answer to his motion for bill of particulars as to what time of day the crime was committed was sufficient. The State had answered that the crime was committed "sometime between 11:05 P.M. on January 14, 1976 and 6:47 A.M. on January 15, 1976." At hearing on the motion, the State indicated that at the time they could be no more specific. Defendant contends that knowing the time of the offense was critical to his alibi defense.
Unless the defendant was prepared to tailor an alibi to fit the accusation, knowing the precise time of the offense would be of scant help. Particularly since the State could be no more specific, the time was stated with sufficient precision.
This assignment is without merit.

Assignments of Error Nos. 39 and 56
Defendant contends the State should have provided him with a summary of the substance of an oral inculpatory statement he gave to Slidell police officers. Recently, in State v. Alexander, 351 So.2d 505, 507-08 (La.1977), we rejected a similar contention, quoting the following from State v. Watson, 301 So.2d 653 (La.1974):
"`Defendant argues, however, that the rule which allows the defendant to discover written confessions should be extended to include oral confessions. This *951 court has consistently refused to extend this rule which was first announced in State v. Dorsey, 207 La. 928, 22 So.2d 273 (1945). Discovery by defendant in criminal cases is greatly restricted. In State v. Dorsey, supra, the court realized that it was in effect creating an exception to the rule that the defendant is not allowed to discover the evidence on which the prosecution bases its case. The court specifically limited the holding to a written confession by the accused.
* * * * * *
Pretrial inspection of evidence, even of confessions, is not a question of constitutional proportions. There is no statute requiring the production of `oral confessions.' Probably for the reason that the management of a scheme requiring such production would be difficult and complicated, Louisiana courts have consistently refused to extend the rule for production to oral statements of the accused." [Citations deleted.]"
(La.Acts 1977, No. 515, Art. 716(C), which would have required production of the contents of an oral statement was not in effect at the time).
The State had supplied the requisite C.Cr.P. 768 notice identifying where, when and to whom the statement had been given. In addition, the essence of the statement was summarized in the notice as follows:
". . . he stated that he was involved in the shooting, that there were some shotgun shells in his bedroom at his mother's house and that the shirt that he was wearing the night before was located in this bedroom. He further stated in this conversation with the officers that he had pulled the trigger in the shooting."
Hence, defendant was provided with substantially what he was requesting in his motion for bill of particulars and prayer for oyer.
These assignments have no merit.

Assignments of Error Nos. 40, 64 and 65
Defendant assigns as error the trial judge's failure to conduct an in-camera inspection of the State's files in order to determine if it had in its possession any exculpatory evidence. (Defendant's application for writs on this question was denied by the court on October 22, 1976).
In response to defendant's question in his motion for bill of particulars and his Brady motion in his prayer for oyer, the State asserted that no exculpatory evidence or evidence favorable to defendant was in its possession. The trial judge held the State's answers to be sufficient and refused to conduct an in-camera inspection. Defendant now alleges that the State possessed certain exculpatory material which should have been disclosed: (1) statements of co-indictees Pichon and Gutter about their own involvement in the offense; (2) information that the alleged weapon used in the offense was recovered at Gutter's apartment; (3) information that Pichon had led the police to where the victim's money pouch was located; (4) information that hair samples of the victim were found on Pichon but not on the defendant; and (5) information that due to the small size of the blood sample found on defendant's pants leg that an Rh factor on the blood could not be determined.
This court has generally held that a pretrial in-camera inspection of the state's file is not required; see, e. g., State v. Linkletter, 345 So.2d 452, 454 (La.1977); State v. Nix, 327 So.2d 301, 320 (La.1976); State v. Ranker, 263 La. 914, 269 So.2d 812 (1972), where the State denies possession of the information requested and the defendant makes no showing to contradict the State's answer. State v. Robinson, 342 So.2d 183 (La.1977). In State v. May, 339 So.2d 764 (La.1976), however, we held that the trial court erred in not requiring the prosecutor to respond to a specific request for an allegedly exculpatory letter "by stating whether the State had knowledge or possession of it, and, if so, by not requiring the prosecutor to furnish it to defendant or submit it to the court for a determination as to whether it constituted material to which defendant was not entitled." 339 So.2d at 770 (emphasis added). The court *952 then remanded the case to the trial court to determine if the statement requested was material, would cause a reasonable doubt as to defendant's guilt, and should have been disclosed.
Although an in-camera inspection of the State's file would have obviated any possible error in judgment by the State that it did not possess exculpatory evidence, the requested information was not, in fact, exculpatory of defendant, and the State had no obligation to disclose it prior to trial. (1) Co-indictee Pichon's statement inculpated defendant in the robbery and identified him as the trigger man while Gutter's statement denied any knowledge whatsoever of the robbery and hence would not necessarily be favorable to defendant; (2), (3) and (4) this information indicated the co-indictees' involvement but would not necessarily negate an inference of defendant's involvement; and (5) the inconclusive nature of the blood tests conducted by the State's witness would not necessarily be exculpatory (see discussion in Assignment No. 27).
There was no reversible error committed by the trial court's failure to conduct an in-camera inspection of the evidence since the State was correct in its response that it did not possess any exculpatory material.
These assignments are without merit.

Assignment of Error No. 42
Defendant contends that the trial court erred in not compelling the State to answer defendant's request in his motion for bill of particulars for the names, ages and addresses of other persons connected with the crime as principal, accomplice, or accessory after the fact. The State acknowledged that others were involved; however, it refused to provide the more detailed information requested. Defendant alleges that in order to have been able to prepare his defense he should have been made aware of other persons connected with the crime. Further, he argues that information of arrests of other persons is favorable to the accused and should have been disclosed under Brady.
Although the State did not provide the names of others involved in the crime by way of its answer to defendant's motion for bill of particulars, Ernest Pichon and Eric Gutter were also named in the bill of indictment charging defendant with the armed robbery of William Schultz. Thus, defendant already had access to the names requested.
The function of a bill of particulars is to more fully inform defendant of the nature and cause of the charge against him in with sufficient information to properly prepare his defense. C.Cr.P. 484. The bill of particulars, however, may not be used to discover details of evidence with which the State expects to prove its case. State v. Walker, 344 So.2d 990 (La.1977). The granting of a motion for bill of particulars is a matter that rests within the sound discretion of the trial judge, and his ruling will not be disturbed absent prejudice to the accused. See, e. g., State v. Huizar, 332 So.2d 449 (La.1976).
There was no error in the trial court's denial of defendant's motion. Further, defendant had available to him the identity of the others involved in the indictment itself.
This assignment is without merit.

Assignment of Error No. 50
In response to defendant's question in his motion for bill of particulars, "Was any property belonging to or within the control or dominion of DOUGLAS BRYAN BOYD searched? If so, where, when and what was taken? Please attach copy of warrant, affidavit and return," the State answered, "Yes, copy of search warrant and return on search warrant attached." At hearing on the motion defense counsel requested that the State stipulate that the property listed on the search warrant was all of the property belonging to the defendant which was seized incident to his arrest. The trial court held the answer to be sufficient. Defendant assigns as error the trial court's failure to require the State to make the requested stipulation.
*953 The return on the search warrant indicated that change, shotgun shells, a shirt, a ski mask and a box containing ten shotgun shells were seized pursuant to the search warrant. At the trial, however, defendant's shoes and pants, taken from him upon his arrival at the St. Tammany Parish sheriff's office, were introduced into evidence. Defendant did not object to their introduction as failing to conform to the information provided in the bill of particulars.
Defendant now contends that the State's failure to disclose that his pants and shoes had been seized and had been subjected to an exhaustive search for evidence of blood and mud prejudiced him since these items formed perhaps the most damaging evidence against him.
The defendant was not prejudiced by the missing disclosure in the bill of particulars that defendant's clothing had been taken from him. Since the items were taken from defendant himself he was aware of the seizure.
This assignment is without merit.

Assignments of Error Nos. 4, 4A, 85 and 86
In these assignments defendant attacks the validity of the general venire and the grand and petit jury venires, complaining of exclusion of women, exclusion of doctors and law enforcement personnel and the denial of a grand jury randomly chosen from a fair cross section of the community.
The general venire from which the grand jury which indicted the defendant was chosen was drawn on December 5, 1975. The grand jury itself was selected January 7, 1976. The petit jury venire was drawn in November, 1976; the trial commenced January 10, 1977.
At the trial of the motion to quash the jury venires, there was no evidence that the defendant had been denied jury venires selected from a cross section of the community. Nor was there any evidence that women had been excluded.
There were no women on the grand jury which indicted the defendant. However, there were women on the grand jury venire from which the grand jury was drawn. The trial court found there were ninety-seven women among the three hundred members of the general venire from which the grand jury was chosen. Ninety out of the two hundred on the petit jury venire were women. The evidence shows that employees of the clerk's office, according to instructions, selected names from lists of subscribers to public utilities and from the list of registered voters. (At the time the motion was tried, lists of licensed automobile drivers had been used for several months).
No evidence whatsoever of any exclusion of women was adduced. Defendant's sole argument seems to be that, among the subscribers to the public utilities, there is a disproportionately large majority of men. We find there was no showing of systematic exclusion of women. Part of the evidence introduced at the motion to quash the venires was the same evidence which had been introduced in State v. Taylor, 347 So.2d 172 (La.1977), in which we overruled motions to quash jury venires on the grounds of exclusion of women and blacks.
Defendant argues that under State v. Procell, 332 So.2d 814 (La.1976), the venire should be quashed because the jury commissioners themselves did not place the names of persons who were exempt from jury service on the jury venire, thereby excluding certain persons qualified to serve on juries, but who might be exempt from service.
This is not a Procell case. The jury commissioners testified, as did the former clerk of court, who was an ex-officio member of the jury commission, under the direction of the clerk, employees in her office selected from the lists mentioned above large numbers of names. Questionnaires were sent to those people whose names had been selected. When the questionnaire was returned, it contained vital information about the prospective juror such as birth date, sex, citizenship, literacy, mental or physical infirmities, felony convictions, pending felony *954 charges, and employment. The questionnaire was accompanied by a form letter which listed the exemptions, and contained a box to be checked if the prospective juror requested excuse from jury service by reason of the exemptions.
When the questionnaires were returned to the clerk's office, they were examined by the jury commission which then excluded from the venire those persons who claimed an exemption. In 1976 this practice was questioned in State v. Reid, 340 So.2d 551 (La.1976). There, we refused to apply the rule of State v. Procell, supra, because members of the exempt classes were not automatically excluded without affording them the opportunity to waive their exempt status and serve as jurymen, if they wished. (This court later amended its rules and by Rule 26, effective January 1, 1977, provided that the jury commission should select a general venire composed of all qualified persons except those classified as excluded under the rules, those excused by the court, and those who are exempt who chose to claim the exemption). The most serious defect in the selection procedure referred to in the trial of the motion was the possible exclusion of certain exempt persons at the stage at which the clerk's office selected names to whom questionnaires would be directed. The former clerk testified that lawyers and "law enforcement people" were not sent questionnaires, if their names were recognized. However, there was no evidence to indicate that the exclusion of lawyers or law enforcement people was effective, except as to some whose names might be recognized. One member of the jury commission testified that there was no exclusion of lawyers or law enforcement people to his knowledge, because of large numbers of complaints from members of both groups who had received the "juror qualification questionnaire." One of the lawyers who participated in the trial of the motion to quash had received such a questionnaire. The only lawyers and law enforcement people whose names were excluded, as far as the evidence discloses, were those whose names the clerk happened to recognize on the lists. Clearly, some of the members of those exempt classes did receive questionnaires, and did have the opportunity to waive their exemption. The evidence does not support the argument that there was such a systematic exclusion of an identifiable group or class as to deny the defendant juries from a fair cross section of the community.
Some of the testimony of the jury commissioners was contradictory, and some of it was not specific. One commissioner testified that, before January, 1977, the commission did not excuse anyone, and specifically no one was excused by the commission on December 5, 1975. Another commissioner gave no evidence of illegal exclusion. One elderly commissioner did, however, testify that the commission excused those who requested it, and sometimes individual commissioners, or the commission, perhaps, did exclude those who were known to be unable to serve. The evidence does not, however, show such a violation of the law or the rules of this court which would warrant reversal.

Assignments of Error Nos. 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83 and 84
By these assignments defendant contends that the trial court erred in denying his motion for a new trial.
Defendant's first allegation is that the verdict is contrary to the law and the evidence. Such an allegation presents nothing for this court to review; see, e. g., State v. Tucker, 354 So.2d 1327 (La.1978); State v. Provost, 352 So.2d 661 (La.1977); State v. Fowlkes, 352 So.2d 208 (La.1977), unless no evidence appears in the record supporting one of the essential elements of the offense. State v. May, 339 So.2d 764, 777 (La.1976). There clearly is some evidence of defendant's participation in the crime.
Additionally, defendant urges that several rulings made by the judge during trial showed prejudicial error. All of these allegations were raised in assignments of error previously discussed.
Defendant also alleges that a new trial should have been granted on the basis of newly discovered evidence. C.Cr.P. 851(3) *955 provides that the court, on defendant's motion, shall grant a new trial whenever:
"(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty."
At hearing on the motion, defendant produced an affidavit of a Dr. Fred Enright who would testify to the effect that there was the possibility of error in the testimony of the serologist, Ms. Reel. Dr. Enright's affidavit stated that due to the small amount of blood found on defendant's pants, which formed the basis of Ms. Reel's test, and the fact it appeared that adequate laboratory controls were not used (there was no testimony to show that controls were employed), there was a possibility of error. (See Assignment No. 27). In addition, the affidavit stated that it would be impossible for Ms. Reel to state that there was no appearance of blood inside the defendant's shoes without having made the necessary laboratory tests, since blood which has reacted with certain substances can change in character and appearance. (See Assignment No. 35). Defendant also introduced a report from the Department of Justice showing that blood tests are subject to multiple error.
The trial court denied the motion for new trial on this ground. He stated in his reasons that, even accepting the allegations made in the affidavit as true, the testimony would only establish a possibility of error and, as such, was too speculative a basis for granting a new trial.
Defendant also introduced affidavits of three individuals whose testimony he alleged would constitute newly discovered evidence warranting a new trial. The affidavits established that these three persons, all of whom were incarcerated in the St. Tammany Parish jail with Ernest Pichon, would testify that Pichon either told the affiants or another person in the presence of affiants that he had killed the cab driver, that no one saw him do it, that he was going "downstairs" (to the courtroom) to protect himself, and that none of these witnesses ever heard Pichon accuse or implicate the defendant in the commission of the crime. The trial court denied the motion, stating that these statements of Pichon would not preclude defendant's own involvement in the crime and thus would be too speculative for the court to make a decision that the jury would have rendered a not guilty verdict.
The trial judge is accorded considerable discretion in evaluating the impact of newly discovered evidence on the verdict and its reliability, and his ruling will not be disturbed on appeal unless there is a clear showing of abuse of discretion. See, e. g., State v. Provost, supra, and cases cited therein; State v. Corey, 339 So.2d 804 (La. 1976).
Defendant argues that Ms. Reel's testimony was the strongest part of the State's case (an evaluation which is inaccurate). He alleges that had he been able to introduce Dr. Enright's testimony, the verdict would have been favorable to defendant. As previously discussed under Assignment No. 27, the inconclusive nature of Ms. Reel's testimony was brought out on cross-examination. The jury was well aware of the need to determine the weight that the testimony should be given. There was no abuse of discretion in the trial judge's ruling that this testimony would probably not change the jury's verdict.
It also appears that the testimony of the three additional witnesses about Pichon's statements would do little more than provide further impeaching evidence. Although on the stand Pichon denied a personal involvement in the armed robbery or murder other than as a participant after the fact, he was cross-examined about prior inconsistent statements in which he admitted his direct participation. Further, the jury was made aware of the intended plea of guilty to the armed robbery charge and a twenty year sentence in exchange for his testimony at defendant's trial. The new witnesses' testimony perhaps could lead the *956 jury to conclude that Pichon acted alone and the defendant was uninvolved; however, as the trial judge noted, this is merely speculation. Pichon's statements did not absolve the defendant of guilt. Thus, the newly discovered evidence was not of a character which would probably have changed the verdict of guilty. There was no showing of abuse of discretion by the trial judge in denying the motion for new trial.
These assignments are without merit.

Assignment of Error No. 88
The defendant assigns as error the overruling of his objection to the following remarks made by the prosecuting attorney in closing argument:
". . . Then you might say, well, he categorically denied any part of the robbery or murder. What did you expect him to do? I told you what the possible penalty of the state is, even though the sentencing is up to the judge. Perjury carries a maximum of ten years. Why should perjury bother him? In the course of criminal justice in recent years, the State of Louisiana, the penalty for the crime of armed robbery has been far greater than the penalty for the crime of killing, because there has been no death penalty. The Supreme Court has thrown it out on several occasions, and because of the fact
BY MR. TOLEDANO: Pardon me, Mr. Rodrigue. Your Honor, I believe I know what Mr. Rodrigue is going to get into and I think that is way beyond the issues of law for this case. He's going to argue a theory, and it's completely out of hand.
BY MR. RODRIGUE: I'm allowed to do that, my theory.
BY MR. TOLEDANO: May we approach the bench one second?
(Counsel approach bench).
BY MR. TOLEDANO: Note an objection, please, for the record.
BY MR. RODRIGUE: And as you know, in connection with armed robbery, there have been any number of killings in the State of Louisiana in the past few years. Why? Because the penalty for killing is less than the penalty for armed robbery and they don't want to leave any witnesses behind. That is exactly what is happening.. . ."
The defendant contends that the argument was improper and prejudicial in that it focuses on "other crimes" (that is, perjury and murder).
The assignment is without merit. First, it does not appear that the defendant's objection was directed toward the reference to perjury. The defense counsel stated: ". . . I believe I know what Mr. Rodrigue is going to get into and I think that is way beyond the issues of law for this case." This objection came after the prosecution had turned from the discussion of perjury to a discussion of the incidence of robbery/murders. However, even if the defendant properly objected to the reference to perjury, it was not improper argument but, rather, a permissible reference to the factors affecting the credibility of the defendant as a witness. See State v. Gallow, 338 So.2d 920 (La.1976); State v. Whitehurst, 319 So.2d 907 (La.1975); State v. Kaufman, 304 So.2d 300 (La.1974).
Similarly, the reference to why a defendant would kill the person he robbed is a reasonable inference which could be drawn from the facts and law. Because the evidence of the murder was clearly admissible as part of the res gestae, the defendant was not prejudiced by the reference to any inadmissible evidence of other crimes.

Assignments of Error Nos. 89 and 90
Defendant contends that the trial court erred in denying him the opportunity to call witnesses in support of his motion for new trial. The witnesses the defendant wanted to call had each given a statement in affidavit form and the affidavits were filed with the motion for new trial. (See Assignments Nos. 72-84).
In both State v. Passman, 345 So.2d 874 (La.1977) and State v. Barfield, 292 So.2d 580 (La.1974), this court held that the trial court did not abuse its discretion in refusing *957 to allow the testimony of witnesses at a motion for new trial when the substance of that testimony was contained in affidavits before the court. The defendant in the present case argues that the rulings of Passman and Barfield are distinguishable because he informed the court that the witnesses' testimony would go beyond the scope of their affidavits.
These assignments are without merit. As to one of the prospective witnesses, Dr. Enright, the defense attorney described in argument the nature of the testimony that was not covered in the affidavit. The trial judge, in denying the request to call the witnesses and the motion for new trial on the basis of Dr. Enright's evidence, stated:
"For the record, but, like I say, I will assume the facts that you have alleged in your motion and the facts you have argued here, that's what he will testify to, and that's the ruling of the court." (Emphasis added).
Thus, the evidence was considered and the rulings of Passman and Barfield are controlling. As to the testimony of the other four prospective witnesses, the defense attorney failed to indicate to the court what additional evidence would be obtained if the witnesses were brought to testify in addition to their affidavits. There was no abuse of the trial court's discretion.
The conviction and sentence of defendant are affirmed.
NOTES
[1] We also note that in the case of Anderson v. Maryland, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976), the United States Supreme Court upheld the validity of a search warrant which, after listing particular items to be seized, authorized the seizure of "other fruits, instrumentalities and evidence at this [time] unknown" against a challenge that it was unconstitutionally general. The provisions of C.Cr.P. 165, which allows the seizure of other evidence of the crime in the execution of the search warrant, are compatible with the holding in Anderson v. Maryland.