395 So.2d 714 (1981)
STATE of Louisiana
v.
Rand Thomas STOTT and Steven Ledet.
No. 80KA1826.
Supreme Court of Louisiana.
March 2, 1981.
*715 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., James L. Davis, Dist. Atty., Abbott J. Reeves, Asst. Dist. Atty., for plaintiff-appellee.
Claude R. Sledge, Gemble & Sledge, Mansfield, Don Burkett, Many, for defendant-appellant.
ELLIS, Justice Ad Hoc.[*]
Steven A. Ledet, also known as Frank Braux, and Rand Thomas Stott were charged by information with simple burglary of a pharmacy. After trial by jury, both defendants were found guilty as charged. Ledet was found to be a multiple offender and sentenced to serve 15 years at hard labor. Stott was sentenced to serve eight years at hard labor. Both sentences were without benefit of parole, probation or suspension of sentence. Both defendants have appealed their convictions and sentences.
*716 ASSIGNMENT OF ERROR NO. 1
Both defendants complain of the failure of the trial judge to suppress certain evidence seized at the time of their arrest, and shortly thereafter. Defendants were arrested in New Orleans by Detectives Cook and Morales of the New Orleans Police Department. Cook and Morales were furnished with warrants for the arrest of the defendants and with a list of items taken in the burglary. They went to Stott's residence where they found both defendants and placed them under arrest. Stott, who was not fully clothed, wanted to get some clothing, and was accompanied by Morales to his bedroom. While in the bedroom, Morales saw some coins, a blue and white baseball cap with some coins in it, some bolt cutters and a shotgun, all in plain view, and seized these items as evidence in the case. All of them were introduced into evidence at the trial. Stott's truck was taken to police headquarters and subjected to an inventory search, during which a number of tools were found, which were introduced into evidence at the trial.
Defendants seek to exclude the items found by Detective Morales from evidence because they were seized without a warrant, and because the circumstances of the case do not bring it within the "plain view" exception to the warrant requirement. In State v. Banks, 363 So.2d 491 (La.1978), we said:
"In sum, the conditions necessary for the applicability of the plain view doctrine are: (1) there must be a prior justification for an intrusion into a protected area, (2) in the course of which evidence is inadvertently discovered, and (3) where it is immediately apparent without close inspection that the items are evidence or contraband. State v. Parker, 355 So.2d 900 (La.1978); State v. Fearn, [345 So.2d 468, La.1977], supra. See also, State v. Meichel, 290 So.2d 878 (La.1974)."
The facts of this case clearly bring it within the exception. Detective Morales was lawfully on the premises, the discovery of the evidence was clearly inadvertent, and the record shows that the items seized were identifiable as being connected with the burglary.
We find no merit in defendants' complaint relative to the seizure and introduction into evidence of the tools found in Stott's truck. In State v. Jewell, 338 So.2d 633 (La.1976), the court said:
"The United States Supreme Court explicitly held that standard police procedure in making reasonable `inventory searches' of the nature above set forth, does not constitute unreasonable searches which offends the Fourth Amendment to the United States' Constitution; therefore, evidence obtained as a consequence of such search is admissible in evidence in criminal prosecutions. South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976)."
* * * * * *
"However, in so holding, we adopt the general view of other courts which have reached the same conclusion, that, see Annotation, Inventory Search of Impounded Vehicles, 48 A.L.R.3d 537, 544 (1973):
`An essential requirement to a valid inventory search is that the police must have acted in good faith in conducting the inventory, and must not have used the inventory procedure as a subterfuge for a warrantless search. It has therefore been held that where the conduct of the police was inconsistent with its contention that the search was conducted for inventory purposes, the search was unlawful.'
`Another essential prerequisite to a valid inventory search is that the police must have taken lawful custody of the vehicle in the first instance. It has therefore been held that where the circumstances show that the police had no authority to impound the vehicle, or that police custodial care of the vehicle was not necessary, the inventory search was unlawful.'
`* * * [L]awful custody of an impounded vehicle does not of itself dispense with the constitutional requirement *717 of reasonableness in regard to searches thereafter made of such vehicle.'"
The search herein took place after the vehicle had been impounded for a valid reason, and was carried out pursuant to standard police procedures. The search was not carried out until the morning after the arrest, the vehicle was impounded in an official storage facility and the results of the search were recorded in a "Motor Vehicle Investigation Case Report," a standard form. We find no evidence that the search was carried out in bad faith or as a subterfuge for a warrantless search. We find no merit in this assignment of error.
Defendant Ledet's second assignment of error relates to the finding of the court that he is an habitual offender. The record shows that, following his conviction, on March 13, 1980, of the offense charged herein, a bill of information charging Ledet as an habitual offender, alleging that Ledet pled guilty to two prior felonies in Louisiana: The first was in Jackson Parish, Louisiana, when Ledet pled guilty to simple burglary on December 19, 1973, in case no. 17,521; and the second in Terrebonne Parish, Louisiana, when Ledet pled guilty to three counts of distribution of marijuana on February 4, 1977, in cases nos. 47,309, 47, 310, and 47,311. The evidence indicates that the Terrebonne Parish crimes, and the guilty plea and sentence took place in 1973 rather than 1977, and that Ledet was finally discharged from custody on September 12, 1974. The crime herein was committed on January 13, 1979. Based on the above showing the court found Ledet not guilty of being an habitual offender.
Subsequently, the State moved to re-open the habitual offender hearing, arguing that the court erred in its ruling. The State re-offered the evidence taken at the earlier hearing, and pointed out that the crime herein was committed on January 13, 1979, within five years of the date of Ledet's discharge from custody under the previous convictions. The court thereupon reversed its former ruling, found Ledet to be an habitual offender, and sentenced him accordingly, to 15 years at hard labor, without benefit of probation, parole or suspended sentence.
In this court, Ledet argues that the court erred in reopening the habitual offender hearing, and that it was without authority to reverse its own verdict of not guilty of being an habitual offender.
R.S. 15:529.1(D) provides:
"If, at any time, either after conviction or sentence, it shall appear that a person convicted of a felony has previously been convicted of a felony under the laws of this state, or has been convicted under the laws of any other state or of the United States; or any foreign government or country of a crime, which, if committed in this state would be a felony, the district attorney of the parish in which subsequent conviction was had may file an information accusing the person of a previous conviction. Whereupon the court in which the subsequent conviction was had shall cause the person, whether confined in prison or otherwise, to be brought before it and shall inform him of the allegation contained in the information and of his right to be tried as to the truth thereof according to law and shall require the offender to say whether the allegations are true. If he denies the allegation of the information or refuses to answer or remains silent, his plea or the fact of his silence shall be entered on the record and the judge shall fix a day to inquire whether the offender has been convicted of a prior felony or felonies, as set forth in the information. If the judge finds that he has been convicted of a prior felony or felonies, or if he acknowledges or confesses in open court, after being duly cautioned as to his rights, that he as been so convicted, the court shall sentence him to the punishment prescribed in this Section, and shall vacate the previous sentence if already imposed, deducting from the new sentence the time actually served under the sentence so vacated."
This court has held that the sentence imposed following a finding that the defendant *718 is an habitual offender "is for the new crime only, but it is more severe if the defendant is an habitual offender." State v. Williams, 326 So.2d 815 (La.1976). The proceeding is in the nature of an enhancement of penalty, rather than of a prosecution for a crime. State v. Hill, 340 So.2d 309 (La.1976). In the Hill case, supra, the court inquired into the applicability of principles of res judicata to a case in which a trial court made a ruling favorable to a defendant in an habitual offender proceeding because adequate evidence was not presented, and later, when the evidence was forthcoming, found the defendant to be an habitual offender. The court said:
"Principles of res judicata dictate that a fact or matter distinctly put in issue and directly determined by a court of competent jurisdiction cannot thereafter be disputed between the same parties, and, as earlier indicated, res judicata is applicable in criminal prosecutions.
"A hearing on a multiple offender bill is a trial in only a very broad sense. It is more pertinently an inquiry into defendant's prior criminal conviction or convictions, as part of the sentencing process. Technical inadequacies in the state's documentation at such `trial' mandates a negative determination by the court. On the other hand, such a determination is not a conclusive one `on a fact distinctly put in issue,' as is the case where, relative to prosecution for commission of a criminal offense, there is a judgment that defendant be freed `as a matter of substantive law' (State v. Latil [231 La. 551, 92 So.2d 63], supra).
"We hold therefore, that res judicata is not applicable here.
"We do not mean to suggest that there can be no ruling of any character on the trial of a multiple offender bill which is entitled to finality in the res judicata sense, such for instance, as a ruling that `more than five years have elapsed since expiration of the maximum sentence or sentences, of the previous conviction, or convictions, and the time of the commission of the last felony for which he had been convicted.' R.S. 15:529.1(C). Then, too, there might arise a case in which there is put at issue, and seriously contested, whether the defendant is in fact the identical person whose convictions, properly proven, are described in a multiple bill, and in a re-multiple bill.
"A court determination, favorable to a defendant that a given earlier offense was legally stale or that described convictions were suffered by a person other than defendant, just might as a matter of law be entitled to finality and be the proper subject of res judicata. We need not, however, answer that question in this case."
In this case, adequate evidence was presented, and the court made an error of law in finding that defendant Ledet was "not guilty" of being an habitual offender. At a subsequent hearing, the court, on having its error pointed out to it, reversed its position. We now hold that the court was not barred by res judicata from reversing its position. The ruling of the court in an habitual offender proceeding is not a definitive judgment as is required before res judicata can apply. It is a "finding" ancillary to the imposition of sentence, and is therefore interlocutory in nature. If sentence had been imposed after the first hearing, the result might be different, but, as in this case, the finding of the court is certainly not conclusive prior to imposition of sentence, and the trial judge committed no error in finding defendant Ledet to be an habitual offender.
Defendant Stott's second and third assignments of error are that the trial judge did not state an adequate factual basis for imposing sentence, and that the sentence of eight years without benefit of probation, parole or suspension of sentence is excessive.
In sentencing Stott, the district judge said:
"Court in all cases of sentencing must consider 894.1 of our Louisiana Code of Criminal Procedure. I have considered that article in light of the information available to me in terms of the Defendant's *719 background and the circumstances of this offense. I find under that article specifically, Sub-Sections A(1) and (3) that there is an undue risk during the period of any suspended sentence of probation that defendant would commit another crime. Furthermore, I believe in this defendant's case, there is a prior felony conviction and for that reason, I still find that there is an undue risk during the period of any probation the defendant will commit another crime. Thirdly, that a lesser sentence would depreciate or deprecate the seriousness of the defendant's crime."
He then reviewed each of the mitigating factors set forth in Article 894.1B, Code of Criminal Procedure, and found none of them present.
In his brief, defendant Stott contends that the judge was mistaken in finding that there was a previous felony conviction, contending that his only prior conviction was on a misdemeanor charge. Our review of the pre-sentence report reveals that he is mistaken in this contention, and that the district judge was correct in his characterization of defendant's prior criminal record. We find that the trial judge properly articulated his reasons for the sentence given defendant Stott, and that the sentence given Stott was not beyond the limits of his discretion.
Defendant Stott's fourth assignment of error is that he was convicted by a non-unanimous jury, which he alleges unconstitutionally erodes the State's burden of proving him guilty beyond a reasonable doubt. He cites no authority for this proposition of law.
Art. 1, § 17 of the 1974 Louisiana Constitution provides that noncapital cases in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict. This scheme of non-unanimous jury verdicts has been approved by the United States Supreme Court, which has recognized that unanimity of twelve member juries is not required in state cases. Johnson v. Louisiana, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972); Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972); cf. Burch v. Louisiana, 441 U.S. 130, 99 S.Ct. 1623, 60 L.Ed.2d 96 (1979).
This assignment lacks merit.
The convictions and sentences are affirmed.
DIXON, C. J., dissents with reasons.
LEMMON, J., concurs and assigns reasons.
LEMMON, Justice, concurring.
The police had probable cause to seize and search the truck. Since the truck was parked on a public street, readily accessible to anyone (including defendants' relatives or confederates) to move the truck or to remove evidence, and since defendants had been alerted about an hour before their arrest to the possibility that they would be arrested, exigent circumstances existed at the time of seizure.[1] Compare State v. Lewis, 378 So.2d 396 (La.1979).
Moreover, probable cause to seize and search the truck was strengthened after the key evidence was seized in the house when defendants were arrested. While in retrospect the officers could have obtained a search warrant for the truck when they obtained the arrest warrants, the course of action they did pursue was reasonable under the overall circumstances, and there was no unreasonable intrusion into an area where defendants had a high expectation of privacy.
DIXON, Chief Justice (dissenting).
I respectfully dissent.
There was time for the New Orleans detectives to communicate their initial findings to the Sabine Parish deputy, and time for that deputy to get an arrest warrant. Why no warrant was obtained to seize and *720 search the truck does not appear. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1974), is squarely on point. No adequate reason for the warrantless seizure of the truck appears. State v. Massey, 310 So.2d 557 (La.1975), applied the principles of Coolidge in a case almost exactly like this. See also State v. Hargiss, 288 So.2d 633 (La.1974).
NOTES
[*] Judges Ellis, Cole, and Watkins of the Court of Appeal, First Circuit, participated in this decision as associate justices ad hoc, joined by Chief Justice Dixon and Associate Justices Marcus, Watson, and Lemmon.
[1] The subsequent search was also justified on the basis of the probable cause and exigent circumstances existing at the time of the seizure.