438 So.2d 652 (1983)
STATE of Louisiana, Appellee,
v.
James COLLIER, Appellant.
No. 15559-KW.
Court of Appeal of Louisiana, Second Circuit.
September 20, 1983.
Love, Rigby, Dehan, Love & McDaniel by William G. Nader, Shreveport, for appellant.
Paul J. Carmouche, Dist. Atty., Barbara B. Rutledge, Scott J. Crichton, Catherine M. Estopinal, Asst. Dist. Attys., Shreveport, for appellee.
Before HALL, MARVIN and SEXTON, JJ.
SEXTON, Judge.
We previously granted writs of review herein to consider the defendant's misdemeanor conviction for violation of a Caddo Parish ordinance prohibiting owners from *653 allowing dogs to "run at large." We reverse the conviction.
On September 19, 1982, the defendant's neighbor, Thomas H. Hoffman, was awakened by a noise about 8:00 a.m. Upon looking out the window, Mr. Hoffman testified that he saw a German shepherd belonging to the defendant partially inside a rabbit cage in his yard, and another shepherd belonging to the defendant "grabbing at the wire." Warning shouts and a subsequent warning shot from Mr. Hoffman's shotgun did not discourage the dogs, he further testified. At that point he shot the dog in the cage. As the other dog came toward his position on the porch, he also shot it. He then went inside and called the Sheriff's office. That office dispatched Deputy Steve Thompkins, who testified that he observed that the dogs had been shot, and found that the defendant, Mr. Collier, was not at home. Upon discussing the matter with Mr. Collier later, he testified that Mr. Collier admitted owning the dogs and stated that the dogs were allowed to run in the yard but were trained not to leave the yard.
Mr. Collier runs a guard dog security company called Jaws Protection Agency from his home. He is principally assisted by his son and a nephew. The defense evidence consisted of the testimony of Mr. Collier and his son, Brian. That evidence showed that the defendant was not at home at the time of the incident. Just prior to the incident, Brian was grooming the two shepherds in the front yard. One of the dogs was a seven and one-half month old puppy. The other dog was some five and one-half years old and apparently served as the family pet as well as a guard dog, when needed. The older dog was obedience trained and was also trained to attack and protect on command. The younger dog was obedience trained only. Mr. Collier testified that he was too young for the other training.
While Brian was grooming the dogs, the phone rang and he left the dogs in what was termed the "down stay" position and went to answer the phone. In this position the dogs are ordered to lie down and stay in the position where they are located. Brian testified that on returning from the phone, the dogs were gone, a circumstance which he stated was unusual and unexpected.
After looking around for them to no avail, and as he was going to obtain assistance in locating them, Deputy Thompkins arrived. Brian then learned of the dogs' fate.
The defendant James Collier was subsequently charged with violating Section 4-97 of Caddo Parish Ordinance No. 2011. The bill of information charged that the defendant:
"did not confine his two German shepards (sic) to prevent their running at large and were not under the direct control of a competent person by means of a secure leash or other equivalent means of positive control, in a dedicated or recorded subdivision of Caddo Parish containing at least 20 dwelling units within one-half mile radius or any mobile home park within the parish ...." (Emphasis ours)
In pertinent part, Section 4-49 of Ordinance No. 2011 of Caddo Parish prohibits "dogs running at large" in the following manner:
"(a) This subsection shall apply to dogs running at large within the geographical limits of a dedicated and/or recorded subdivision of Caddo Parish containing at least twenty (20) dwelling units within a one-half mile radius or any other area containing at least twenty (20) dwelling units within a one-half mile radius or any mobile home park within the parish.
"(b) Every owner of a dog or dogs shall confine the same so as to prevent their running at large and such enclosure shall be maintained in a clean and sanitary condition. When dogs are not confined in an appropriate enclosure, they must be under the direct control of a competent person by means of positive control. The foregoing shall not be applicable in the case of dogs engaged in obedience training or competition where such dogs are in fact under voice or other effective means of control of a competent person.

*654 ...."
The defendant was found guilty as charged in a bench trial on March 23, 1983. He was sentenced on that same date to pay a fine of $50.00 and costs, or serve ten days in jail. The court ordered the fine and jail sentence suspended upon payment of costs. The defendant subsequently perfected this writ application complaining, among other things, that the trial court erred in denying a motion for judgment of acquittal at the close of the State's evidence and in subsequently allowing the State to reopen its case to present additional evidence on an essential element of the offense after that motion. Finding merit in this contention, we do not address the other issue raised by the defendant.
At the conclusion of the State's evidencewhich consisted of the testimony of Mr. Hoffman and Deputy Thompkinsthe defense moved for a judgment of acquittal under the authority of LSA-C.Cr.P. Art. 778. In so doing, the defense strenuously contended that the State had failed to prove an essential element of the offense, specifically that the defendant had allowed the dogs to run loose in a dedicated or recorded subdivision of Caddo Parish. The defense noted that the statute did indeed prohibit owners from allowing dogs to run at large in either a recorded subdivision with at least twenty dwelling units within a half-mile radius, or in any other area containing at least twenty dwelling units within a half-mile radius. However, the defendant was charged solely with allowing the dogs to run at large in a dedicated subdivision containing at least twenty dwelling units within a half-mile radius. The defense asserted that the State's proof was deficient and that a judgment of acquittal was therefore mandated. Thus, the defense strenuously contended that while the State's proof might meet the statute, it did not conform to the bill as charged.
Concerning the crucial question of residential density and whether the area was a dedicated subdivision, Mr. Hoffman testified in a vague and general manner. However, Deputy Thompkins testified positively that there were at least twenty dwelling units within a half-mile radius of the residence where this incident occurred. These were the only two witnesses for the State and there was no evidence introduced prior to the State reopening its case with respect to the existence of a dedicated or recorded subdivision.
After a recess and discussion in Chambers, the trial court noted that "the State moved in chambers to re-open its case to submit additional evidence insomuch I think the State almost concedes that the bill is... improperly drafted based on the evidence adduced." On the authority of State v. Boyd, 359 So.2d 931 (La.1978), the trial court allowed the State to reopen. After reopening, the State introduced the subdivision plat where both the defendant and Mr. Hoffman resided, thereby eliminating the objection complained of in the motion for a judgment of acquittal.
Generally speaking, the trial court has considerable latitude in determining whether a party to a criminal case is allowed to reopen. State v. Bush, 297 So.2d 415 (La.1974). (Affirmed trial court refusal to allow the defendant to reopen subsequent to the defense resting and the prosecution determining not to present a rebuttal, even though the defense indicated that the reason it wanted to reopen was to recall a witness to ask questions which had been misplaced in counsel's notes.) State v. Boyd, 359 So.2d 931 (La.1978). (Affirmed trial court allowing the prosecution to reopen subsequent to resting, in order to recall a witness to show where a crucial soil sample had been taken.)
The State here relies heavily on Boyd, supra. It should be noted that Boyd was a prosecution for armed robbery before a jury. Just as in this cause, the defendant there had made a motion for a judgment of acquittal. However, such a motion was not then and is not now available in a trial before a jury.[1]
*655 LSA-C.Cr.P. Art. 778, which deals with the motion for judgment of acquittal, states:
"In a trial by the judge alone the court shall enter a judgment of acquittal on one or more of the offenses charged, on its own motion or on that of defendant, after the close of the state's evidence or of all the evidence, if the evidence is insufficient to sustain a conviction.
"If the court denies a defendant's motion for a judgment of acquittal at the close of the state's case, the defendant may offer its evidence in defense." (Emphasis ours)
It is clear that in this cause the State had failed to prove an essential element of the offense in its original presentation. The defendant was charged with allowing his dogs to run loose in a dedicated or recorded subdivision with twenty dwelling units in a ½ mile radius, and the State did not prove that the defendant in fact lived in a dedicated subdivision in Caddo Parish.
The defense then moved for acquittal and thereby pointed out the State's failure. Only then, after the State's neglect had been brought to its attention, did the State move to cure its deficiency. This action was allowed on the authority of Boyd, supra. We believe Boyd is not controlling as it was a trial before a jury, rather than a bench trial, such as in the instant case.
In a jury trial the judge has no authority to grant a judgment of acquittal. But in a bench trial, the judge is mandated by Article 778 to render a motion for judgment of acquittal if an essential element is not proven.
The denial of the motion for judgment of acquittal is subject to our review if no evidence of an essential element of the offense is presented. State v. Hargrave, 411 So.2d 1058 (La.1982); State v. Vaughn, 378 So.2d 905 (La.1979).
We therefore here hold that it is error to allow the State to reopen its case in a bench trial to prove an essential element of the offense charged after the State has closed, and after the defendant has moved for a judgment of acquittal. The conviction herein is therefore reversed.
REVERSED.
NOTES
[1] This motion, formerly known as a motion for directed verdict originally authorizedin discretionary termsa judgment of acquittal by the trial court in a jury trial at the close of State's evidence, or at the conclusion of all the evidence if the evidence was insufficient to sustain a conviction. That part of the statute authorizing such action was eliminated by Act 527 of 1975, prior to Boyd.